# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALFREDO G., <br>       Plaintiff, <br> v. <br> ANDREW SAUL, *Commissioner of Social Security*,[1] <br>       Defendant. | Case No.: 3:19-cv-00852-RBM <br><br> **ORDER AFFIRMING DECISION OF SOCIAL SECURITY COMMISSIONER** <br><br> [Docs. 18, 19, 20.] |

## I. <u>INTRODUCTION</u>

Plaintiff Jose Alfredo G. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's application for Child Disability Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act"). (Doc. 1.) Before the Court are: Plaintiff's Merits Briefing, seeking remand to the Social Security Administration ("SSA")

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019 and is therefore substituted for Nancy A. Berryhill as Defendant. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

for further proceedings (Doc. 18); Defendant's Opposition to Plaintiff's Merits Briefing (Doc. 19); and Plaintiff's Reply in Support of Merits Briefing (Doc. 20).

The parties consented to Magistrate Judge jurisdiction. (*See* Gen. Or. 707; Doc. 11.)

After a thorough review of the papers on file, the Administrative Record ("AR"), the facts, and the applicable law, the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free from legal error. Accordingly, the decision of the ALJ is **AFFIRMED**.

## II. PROCEDURAL BACKGROUND

On April 30, 2015, Plaintiff filed an application for Child Disability Benefits and Supplemental Security Income under Titles II and XVI of the Act, alleging disability beginning on May 6, 2014. (AR, at 211-219[2].) After Plaintiff's claim was denied initially on October 1, 2015 (AR, at 101-102) and upon reconsideration on December 22, 2015, (AR, at 125-126), Plaintiff requested a hearing before an ALJ (AR, at 140-141), which was held on December 27, 2017 (AR, at 39-78). Plaintiff appeared and was represented by counsel, and testimony was taken from Plaintiff, Plaintiff's mother, and Mark Remas, a vocational expert ("VE"). (AR, at 39-78.)

On March 2, 2018, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Act. (AR, at 20-38.) On May 3, 2018, Plaintiff sought review of the decision by the Appeals Council. (AR, at 208-210.) On March 8, 2019, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision became the final decision of the Commissioner pursuant to 42 U.S.C. § 405(h). (AR, at 1-8.)

## III. ALJ'S FINDINGS

In his written decision, the ALJ initially determined Plaintiff had not attained the age of twenty-two as of the alleged onset date for the payment of Child Disability Benefits, as

---

[2] All AR page-number citations refer to numbers listed on the bottom right-hand corner of the page, rather than page numbers assigned by the CM/ECF system.

required by the Act. 20 C.F.R. § 404.350(a)(5). The ALJ then followed the five-step sequential evaluation process to determine whether Plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 6, 2014, the alleged onset of disability. (AR, at 28.)

At step two, the ALJ found Plaintiff suffers from the following severe impairments: autism spectrum disorder, obsessive-compulsive disorder, learning disorder, and anxiety disorder. (AR, at 29.)

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to the following non-exertional limitations: Plaintiff is limited to "understanding, remembering, and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours[;]" Plaintiff can only have "non-personal, non-social interaction[s] with co-workers and supervisors, involving no more than a brief exchange of information or hand off of work-product[;]" and Plaintiff is "unable to work as part of a team." (AR, at 30.)

At step four, the ALJ found that Plaintiff has no past relevant work. (AR, at 32.)

At step five, considering Plaintiff's age, education, work experience, RFC, and VE testimony, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR, at 33.) The ALJ identified the representative positions of: Cleaner II, Specific Vocational Preparation ("SVP") 1, with approximately 100,000 jobs existing in the national economy (Dictionary of Occupational Titles ("DOT") 919.687-014); Hand packager, SVP 2, with approximately 150,000 jobs existing in the national economy (DOT 920.587-018); and Folder, SVP 2, with approximately 60,000 jobs existing in the national economy (DOT 369.687-018). (AR, at 33.)

Accordingly, the ALJ found Plaintiff "had not been under a disability, as defined in the [Act], from May 6, 2014, through the date of []his decision . . . ." (AR, at 34.)

## IV. ISSUES IN DISPUTE

As set forth in the parties' merits briefing, the disputed issues are as follows:

1. Whether Plaintiff properly preserved his challenge to the ALJ's step-five analysis by presenting additional jobs numbers evidence for the first time to the Appeals Council (Doc. 19, at 4-7; Doc. 20, at 2-3); and

2. Whether the ALJ's step-five analysis is supported by substantial evidence (Doc. 18, at 4-13; Doc. 19, at 3-9; Doc. 20, at 2-4).

## V. STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. § 405(g). "As with other agency decisions, federal court review of social security decisions is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 2003).

In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

4

When the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Stated differently, when the evidence "can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]"; rather, the Court only reviews "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). Further, when medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are the exclusive functions of the ALJ. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is not within the Court's province to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *Batson*, 359 F.3d at 1193.

## VI. **DISCUSSION**

### A. PLAINTIFF PROPERLY PRESERVED HIS CHALLENGE TO THE ALJ'S STEP-FIVE DECISION

Plaintiff challenges the ALJ's step-five decision by attacking the reliability of the VE's testimony as to jobs numbers. (Doc. 18, at 4-12.) Specifically, Plaintiff claims the VE's jobs numbers testimony is undermined by non-DOT sources. (*Id.*) Defendant contends that Plaintiff's failure to raise the issue before the ALJ waived the issue. (Doc. 19, at 4-7.) Plaintiff responds that presenting the evidence to the Appeals Council sufficiently preserved the issue on appeal before this Court. (Doc. 20, at 2-3.)

"[W]hen [social security] claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). And where the claimant fails to present an issue before the ALJ or the Appeals Council, the claimant forfeits the issue on appeal to a federal district court. *Shaibi v. Berryhill*, 883 F.3d 1102, 1103, 1109 (9th Cir. 2017). "[T]he final decision of the Commissioner includes the Appeals Council's denial

of review, and the additional evidence considered by that body is evidence upon which the findings and decision complained of are based." *Brewes v. Comm'r. of Social Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2010) (internal citations and quotations omitted). It is therefore "appropriate to consider both the ALJ's decision and additional evidence submitted to the Appeals Council[,]" because "'it reached [its] ruling after considering the case on the merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to provide a basis for changing the hearing decision.'" *Id.* (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451-1452 (9th Cir. 1993)); *see also Sims v. Apfel*, 530 U.S. 103, 111 (2012) ("the regulations further make clear that the Council will evaluate the entire record, *including new and material evidence*, in determining whether to grant review.") (emphasis added.)

Here, Plaintiff failed to raise the issue of the reliability of the VE's job numbers, or the evidentiary basis for those numbers, at the administrative hearing before the ALJ. (AR, at 41-77.) However, Plaintiff raised the issue before the Appeals Council. (AR, at 300-338.) The Appeals Council considered the issue and Plaintiff's new evidence in denying review of the ALJ's decision, and the evidence is now part of the administrative record before this Court. (AR, at 300-338); *Brewes*, 682 F.3d at 1162; *Sims*, 530 U.S. at 111. Accordingly, Plaintiff preserved the issue on appeal.

### B. THE ALJ'S DECISION IS BASED ON SUBSTANTIAL EVIDENCE

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ allegedly relied on faulty VE testimony. (Doc. 18, at 4-12.) First, Plaintiff attacks the VE's jobs numbers testimony with respect to two of the jobs he identified at the administrative hearing—Cleaner II and Folder— because it conflicts with other sources of vocational data such as the Occupational Outlook Handbook[3] ("OOH") and Job Browser

---

[3] The OOH is a publication of the United States Department of Labor Bureau of Labor Statistics that includes employment numbers and projections categorized by Standard Occupational Classification ("SOC") system groups. *See* https://www.bls.gov/ooh/# (last visited Nov. 27, 2019).

6

Pro[4] (Doc. 18, at 4-7, 8-9.) Second, Plaintiff attacks the VE's testimony with respect to all three jobs identified at the hearing—Cleaner II, Folder, and Hand packager—because it conflicts with Occupational Information Network[5] ("O*NET") data. (Doc. 18, at 7-12.) Defendant responds that an ALJ is not required to resolve conflicts between a VE's testimony and non-DOT sources, and in any case, such a conflict is not "apparent" to warrant resolution by an ALJ. (Doc. 19, at 6-7.) The Court finds that discrepancies between VE testimony and non-DOT sources as to jobs numbers data do not constitute apparent conflicts requiring resolution by an ALJ. The ALJ properly relied on job data presented by the VE, therefore the ALJ's step-five determination is based on substantial evidence.

        1.    <u>The ALJ is Not Required to Resolve Discrepancies between VE Testimony and Non-DOT Sources.</u>

At the fifth step of the ALJ's disability analysis, the ALJ is required to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). In making this determination, the ALJ may rely on VE testimony. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (noting that the SSA relies on VE testimony in making disability determinations). The ALJ also relies on the DOT, which is the SSA's "primary source of reliable job information regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-846 (9th Cir. 2015) (internal quotations omitted). In addition, the ALJ takes administrative notice of the OOH. *See* 20 C.F.R. §§ 505.1566(d)(5), 416.966(d)(5). Generally, an ALJ need not inquire into the foundation of

---

[4] Job Browser Pro is described as a "software product designed for career guidance, transition, disability management and legal professionals..." *See* https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro (last visited Nov. 27, 2019).

[5] The O*NET is a source of occupational information developed under the sponsorship of the United States Department of Labor/Employment and Training Administration, containing "standardized and occupation-specific descriptors . . . covering the entire U.S. economy." *See* https://www.onetcenter.org/overview.html (last visited Nov. 27, 2019).

7

the VE's testimony. *See* 20 C.F.R § 404.1566(c)(5)(e); SSR 00-4P; *Johnson v. Shalala*, 60 F.3d 1428, 1435-1436 (9th Cir. 1995). But an ALJ is required to inquire whether a VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. *See* SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT). When there is an *apparent* conflict between the VE's testimony and the DOT, the ALJ is required to reconcile the inconsistency. *Massachi*, 486 F.3d at 1153-54 (emphasis added). The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. *Id.*

However, the ALJ's obligation to resolve conflicts between VE testimony and the DOT does not extend to non-DOT sources like the OOH or O*NET. For example, the Ninth Circuit recently declined to treat the DOT and the OOH as the same. In *Shaibi*, the Court explained:

> [W]e can find no case, regulation, or statute suggesting that an ALJ must *sua sponte* take administrative notice of economic data in the . . . OOH. It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency. But Shaibi cites to no authority suggesting the same is true for the . . . OOH. Our precedent holds, instead, that an ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the national economy, and need not inquire *sua sponte* into the foundation for the expert's opinion.

*Id.*, at 881 (citations omitted). Thus, the Ninth Circuit has already ruled that the DOT and OOH are not equivalent, and an ALJ is under no obligation to reconcile conflicts between the OOH and VE testimony. *See Hocking v. Berryhill*, 2017 WL 6541858, at *4 (C.D. Cal. Dec. 21, 2017) ("Contrary to Plaintiff's argument, an ALJ simply has no independent obligation to investigate or resolve conflicts with the OOH, or any resource other than the DOT."); *Paris v. Berryhill*, 2017 WL 4181093, at *3–4 (E.D. Cal. Sept. 20, 2017) (*Shaibi* held that the OOH does not stand on the "same footing" as the DOT); *Meza v. Berryhill*, 2017 WL 3298461, at *8 (C.D. Cal. Aug. 2, 2017) (same); *Walker v. Berryhill*, 2017 WL

8

1097171, at *4 (C.D. Cal. March 23, 2017) (ALJ has no obligation to inquire into alleged conflicts between the OOH and vocational expert testimony); *see also Poe v. Comm'r*, 342 Fed.Appx. 149, 158 (6th Cir. 2009) ("Social Security ruling (SSR) 00–4p only requires the ALJ to elicit a reasonable explanation when there is conflict between the vocational expert and the DOT . . . . The ruling does not require that the ALJ attempt to address or resolve conflicts between the testimony of a vocational expert and the [OOH]").

Likewise, an ALJ need not resolve conflicts between VE testimony and O*NET data. *Seaberry v. Berryhill*, 2018 WL 1425985, at * 6 (C.D. Cal. March 22, 2018) ("The ALJ was not obligated to resolve any conflict between the OOH or O*NET."); *Meza*, 2017 WL 3298461, at *8 (same); *Willis v. Astrue*, 2009 WL 1120027, at *3 (W.D. Wash. Apr. 24, 2009) ("[P]laintiff provides no basis for relying on a perceived conflict between the O-NET and the VE testimony . . . . SSR 00-4p and cases decided subsequent to that ruling specifically require resolution of conflicts between the DOT and a VE's testimony . . . . Plaintiff fails to provide any support for a contention that the creation of the O-NET altered this requirement.").

Here, the ALJ found Plaintiff can perform the job requirements of: Cleaner II, SVP 1, with approximately 100,000 jobs existing in the national economy (DOT 919.687-014); Hand packager, SVP 2, with approximately 150,000 jobs existing in the national economy (DOT 920.587-018); and Folder, SVP 2, with approximately 60,000 jobs existing in the national economy (DOT 369.687-018). (AR, at 33.)

Plaintiff cites OOH and Job Browser Pro data, contending that only 6,718 jobs exist as Cleaners II (Doc. 18, at 6) and 139 jobs exist as Folders (*Id.*, at 9). Plaintiff also cites O*NET data, contending that 91 percent of jobs as Cleaners II, 92 percent of jobs as Folders, and 97 percent of jobs as Hand packagers rank teamwork as at least "fairly important." (*Id.*, at 7, 9-12.) Given the ALJ's finding that Plaintiff is "unable to work as part of a team," Plaintiff contends he is precluded from performing nearly all of the aforementioned jobs. (*Id.*, at 7, 9-12.)

///

Plaintiff attempts to discredit the VE testimony by pointing out discrepancies between the DOT and the OOH, Job Browser Pro, and O*NET; however, all are non-DOT sources which do not trigger an ALJ's duty to resolve apparent conflicts. *See Shaibi*, 870 F.3d at 881; *Seaberry*, 2018 WL 1425985 at * 6. Therefore, even if this Court were to remand the case for further proceedings before the SSA, the ALJ would not be obligated to resolve any alleged conflicts between the DOT and any of Plaintiff's alternative job data sources. Accordingly, remand is neither warranted nor appropriate on this ground.

2. The Asserted Discrepancies between VE Testimony and Non-DOT Sources Do Not Constitute Apparent Conflicts.

Even if the ALJ *were* obligated to consider non-DOT sources in conjunction with the VE's testimony, the data here does not create an apparent conflict with the VE's testimony to trigger any duty to reconcile such conflict.

An ALJ's duty to reconcile conflicts between VE testimony and the DOT extends *only to* "apparent conflicts." *See Zavalin*, 778 F.3d at 846 (emphasis added). For a difference between a VE's testimony and the DOT to be fairly characterized as a conflict, it must be obvious or apparent, meaning that "the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). Therefore, even if the ALJ *were* required to reconcile conflicts between VE testimony and non-DOT sources, the conflicts would still need to be fairly characterized as "obvious or apparent." *Gutierrez*, 844 F.3d at 808; *see also Gonzalez v. Berryhill*, 2018 WL 456130, at *3 (C.D. Cal., Jan. 17, 2018).

Here, Plaintiff argues that the OOH, Job Browser Pro, and O*NET data create an apparent conflict with the VE's testimony and the DOT. (Doc. 18, at 4-12.) But the asserted conflicts are not obviously or apparently at odds with the VE's testimony. *Gutierrez*, 844 F.3d at 808. Instead, Plaintiff intertwines data from various non-DOT sources to reach the conclusion that a conflict exists. For example, in order to identify a conflict in the VE's testimony that significant numbers of jobs as Cleaners II and Folders exist in the national economy, Plaintiff cites the SOC industry designations, then refers to

OOH job numbers data with the same industry designation, then uses Job Browser Pro data to conclude that the VE's testimony is "feeble or contradicted. . . ." (Doc. 18, at 4-9.) In order to identify conflicts in the VE's testimony with regard to job duties, Plaintiff again cites the OOH industry designations and uses O*NET survey data to conclude that Plaintiff is precluded from performing more than 90 percent of the jobs identified by the VE because team work is "at least fairly important" to those jobs, and teamwork is incompatible with Plaintiff's RFC. (Doc. 18, at 7-12.) Because these alleged conflicts are only revealed by consulting several different non-DOT sources, an apparent conflict does not exist. *Gutierrez*, 844 F.3d at 808; *see also Gonzalez*, 2018 WL 456130, at *3.

In any event, Plaintiff merely presents a lay interpretation of the alternative OOH and O*NET data. Lay assessments alone are insufficient to undermine the VE's analysis; such attempts have been "uniformly rejected by numerous courts." *See Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (reviewing several holdings); *accord Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 18, 2014) ("[P]laintiff's lay assessment of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the VE's opinion."); *Vera v. Colvin*, 2013 WL 6144771, at *22 (C.D. Cal. Nov. 21, 2013) ("[L]ay assessment of the data derived from the Specific Occupation Employment Unskilled Quarterly . . . . does not undermine the reliability of the VE's testimony" where the plaintiff "failed to introduce any VE opinion interpreting the data from those sources and the significance of the information reflected on the various reports is not entirely clear."), *remanded on other grounds*, 637 Fed. Appx. 385 (9th Cir. 2016); *Valenzuela v. Colvin*, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013) (rejecting plaintiff's assessment, in part, because it "was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context.").

Plaintiff failed to retain an expert to interpret the alleged discrepancies in the data. "At best, Plaintiff has presented evidence sufficient to support an alternative finding regarding the number of relevant jobs available in the economy. That is not enough to

11

warrant remand." *Gardner v. Colvin*, 2013 WL 781984, at *3 (C.D. Cal. Mar. 1, 2013). Moreover, even if a conflict existed between the VE testimony and non-DOT sources, the ALJ could rely on the VE's testimony without further inquiry or explanation. *See Philbrook v. Berryhill*, 2017 WL 3671569, at *2 (C.D. Cal. Aug. 24, 2017) (VE's testimony constitutes "substantial evidence" even when the testimony conflicts with information in the OOH); *see generally Treichler*, 775 F.3d at 1098 (the court "leaves it to the ALJ" to resolve conflicts and ambiguities in the evidence); *Andrews*, 53 F.3d at 1039–40 (court must uphold the Administrative decision when the evidence "is susceptible to more than one rational interpretation.").

In sum, Plaintiff's lay interpretation of non-DOT job data is insufficient to create an apparent conflict requiring resolution by an ALJ. Even assuming such a conflict exists, the ALJ's decision is supported by substantial evidence because he appropriately relied on VE testimony. *Gardner*, 2013 WL 781984, at *3; *Philbrook*, 2017 WL 3671569, at *2; *Treichler*, 775 F.3d at 1098.

## VII. <u>CONCLUSION</u>

Based on the foregoing, the Court finds that the ALJ's decision is based on substantial evidence, and Plaintiff is not entitled to remand. Accordingly, **IT IS HEREBY ORDERED**: (1) Plaintiff's request for remand is **DENIED**; and (2) the decision of the Commissioner is **AFFIRMED**. The Clerk of Court shall enter judgment for Defendant and against Plaintiff.

**IT IS SO ORDERED**.

DATE: December 5, 2019

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE